Steve Morris, NV Bar No. 1543
Jean-Paul Hendricks, NV Bar No. 10079
MORRIS LAW GROUP
411 E. Bonneville Ave., Suite 360
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile: (702) 474-9422
Email: sm@morrislawgroup.com
Email: jph@morrislawgroup.com

Thomas J. Finn (*Pro Hac Vice* forthcoming)
James E. Regan (*Pro Hac Vice* forthcoming)
McCarter & English, LLP
185 Asylum Street
Hartford, CT 06119
Telephone: (860) 275-6771
Facsimile: (860) 560-5908
Email: tfinn@mccarter.com
Email: jregan@mccarter.com

Attorneys for Plaintiffs
TEMSA ULASIM ARACLARI SANAYI
VE TICARET A.S.

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| TEMSA ULASIM ARACLARI SANAYI VE TICARET A.S., <br><br> Plaintiff, <br><br> v. <br><br> TC NEVADA, LLC, MICHAEL HAGGERTY, JOHN P. HAGGERTY, and OLGA F. HAGGERTY, <br><br> Defendants. | Case No. <br><br><br> PLAINTIFF TEMSA ULASIM ARACLARI SANAYI VE TICARET A.S. COMPLAINT <br><br> JURY TRIAL DEMANDED |

///
///

Plaintiff, Temsa Ulaşım Araçları Sanayi ve Ticaret A.Ş. ("Temsa"), by and through its undersigned attorneys, for its Complaint against defendants TC Nevada, LLC, ("TC Nevada"), Michael Haggerty, John Haggerty, and Olga Haggerty (the "Individual Defendants" and together with TC Nevada ("Defendants"), hereby states and alleges the following:

## NATURE OF ACTION

This is an action for conversion, intentional interference with both contractual relations and prospective contractual relations, civil aiding and abetting, civil conspiracy, quantum meruit and waste, and primarily seeks redress for, among other things, TC Nevada's unlawful use and possession of certain motorcoaches in which Temsa has exclusive ownership and a first position security interest and in which TC Nevada has no legal interest or right to possession.

## THE PARTIES

1. Temsa is a foreign corporation organized and existing under the laws of the Republic of Turkey. Temsa maintains its principal place of business at Sarıhamzalı Mahallesi, Turhan Cemal Beriker Bulvarı, No: 563/A Seyhan/Adana 01110, Turkey.

2. Upon information and belief, Defendant TC Nevada, LLC ("TC Nevada") is a limited liability company organized and existing under the laws of the State of Nevada.

3. Michael Haggerty is an individual and upon information and belief is the Chairman of the Board of non-party CH Bus Sales, LLC ("CH"), and a citizen of the state of Nevada.

4. John Haggerty is an individual and upon information and belief is an owner and officer of Defendant TC Nevada, is Michael Haggerty's son, and a citizen of the state of Nevada.

///

5. Olga Haggerty is an individual and upon information and belief is an owner and officer of Defendant TC Nevada, is Michael Haggerty's wife, and a citizen of the state of Nevada.

## VENUE AND JURISDICTION

6. Jurisdiction over this matter arises under 28 U.S.C. § 1332 (diversity of citizenship). The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue is proper in this District because TC Nevada LLC's principal place of business is in Nevada and upon information and belief, the Individual Defendants are domiciled in Nevada.

## FACTUAL ALLEGATIONS

8. Temsa is a leading commercial vehicle manufacturer of motorcoaches, buses, and light trucks, which are manufactured in the Republic of Turkey and sold worldwide.

9. Prior to being terminated by Temsa, CH was the exclusive distributor for Temsa in the United States, Canada, Guam and the Commonwealth of Puerto Rico pursuant to certain agreements including a Distribution Agreement ("DA") and a Security Agreement between Temsa and CH.

10. As Temsa's distributor, CH ordered motorcoaches from Temsa and was permitted to sell the motorcoaches in its territory.

11. CH obtained no ownership interest in any Temsa motorcoach until Temsa received payment in full for the specific motorcoach.

12. CH was not permitted to sell, lease or otherwise dispose of any motorcoach without paying Temsa in full. The amount owed to Temsa by CH on the motorcoaches ranges from approximately $209,000 to $382,000, per motorcoach.

///

13. Pursuant to the General Sales Terms & Conditions, which applied to every sale, and which was executed by the parties, title of ownership for all motorcoaches remained with Temsa and only passed to CH upon payment in full. Upon CH's default, Temsa is permitted to access, repossess, and exercise control over the motorcoaches.

14. In addition, CH and Temsa entered into a Security Agreement that specified that Temsa maintained ownership of, together with a first position security interest in, each motorcoach sold by Temsa to CH until the motorcoach was paid in full by CH to Temsa.

15. Temsa financed some of the motorcoaches sold by Temsa to CH, while non-party Turkiye Ihracat Credi Bankasi A.S., also known as Turk EximBank ("EximBank"), a Turkish Bank, financed others.

16. Temsa was never paid in full for any of the motorcoaches initially financed, in part, by EximBank.

17. Indeed, CH never paid Temsa or EximBank any money whatsoever for the motorcoaches at issue in this matter.

18. As such, for all motorcoaches financed by EximBank, Temsa maintained ownership and a first position security interest such that CH had no right to sell, lease, or otherwise dispose of the motorcoaches.

19. Moreover, because of false statements made by Michael Haggerty, combined with CH's failure to pay EximBank or Temsa for any Motorcoach that had previously been financed in part by EximBank, EximBank assigned its rights in all unpaid motorcoaches to Temsa after Temsa was required to repay EximBank the amount not repaid to EximBank by CH.

20. Despite these facts and Temsa's clear and unambiguous legal rights, Temsa has learned that the Individual Defendants, working in concert with each other and with TC Nevada have engaged in unlawful

conduct to deprive Temsa of its ownership of and security interest in certain motorcoaches by improperly leasing, loaning, selling or transferring motorcoaches to TC Nevada in express violation of Temsa's rights, for less than fair market value, and, in some instances for no consideration whatsoever.

21. TC Nevada is not a buyer in due course of the motorcoaches at issue in this action.

22. Rather, TC Nevada and the Individual Defendants acted in concert with, aided and abetted each other to convert, steal and deprive Temsa of its property for Defendants' pecuniary benefit.

23. Indeed, despite Temsa's exclusive ownership interest in the motorcoaches, TC Nevada is presently improperly in possession of certain Temsa motorcoaches. Moreover, TC Nevada to is improperly using several motorcoaches that are the property of Temsa, among other things, run shuttle services in and around Las Vegas causing significant wear to Temsa's motorcoaches and significantly diminishing their value thereby rendering them unsellable as new motorcoaches.

24. Upon information and belief, the Defendants have taken actions designed to conceal TC Nevada's improper possession and use of Motorcoaches from Temsa. TC Nevada is improperly in possession of at least seven motorcoaches, and as many as 30 motorcoaches, thereby causing damage to Temsa ranging in magnitude from $1,463,000 to $9,800,000.

25. TC Nevada, through the combined efforts of the Individual Defendants, is wrongfully exercising dominion over Temsa's property in denial of, or inconsistent with Temsa's title or right therein, and in derogation, exclusion, or defiance of such title or rights.

///
///

26. The wrongful actions of each of the Defendants is knowing, willful, and designed expressly to deny Temsa its ownership in the motorcoaches under false pretenses.

27. The actions of Michael Haggerty in connection with this scheme to deprive Temsa of its property are fraudulent and illegal, and therefore prevent Michael Haggerty from avoiding liability for his own wrongful conduct by claiming protection as an officer of CH.

28. The actions of John Haggerty in connection with this scheme to deprive Temsa of its property were fraudulent and illegal, and therefore prevent John Haggerty from avoiding liability for his own wrongful conduct by claiming protection as an owner or officer of TC Nevada.

29. The actions of Olga Haggerty in connection with this scheme to deprive Temsa of its property were fraudulent and illegal, and therefore prevent Olga Haggerty from avoiding liability for her own wrongful conduct by claiming protection as an owner or officer of TC Nevada.

## COUNT ONE
## CONVERSION (ALL DEFENDANTS)

30. Temsa incorporates by reference paragraphs 1 through 29 of the complaint as though set forth in full herein.

31. Defendants have wrongfully exerted dominion over Temsa's property, in denial of, or inconsistent with, Temsa's title therein or in derogation, exclusion, or defiance of such title or rights.

32. As a direct and proximate result of Defendants' wrongful conduct, Temsa has suffered damages, including money damages in an amount of at least $1,463,000 and as much as $9,800,000.

///
///
///

## COUNT TWO
## INTENTIONAL INTERFERENCE WITH
## CONTRACTUAL RELATIONS (ALL DEFENDANTS)

33. Temsa incorporates by reference paragraphs 1 through 32 of the complaint as though set forth in full herein.

34. Temsa and CH have valid contracts including the DA, the Security Agreement, the Sales Agreements, and the General Sales Terms & Conditions.

35. Defendants had knowledge of the agreements and/or reason to know they existed.

36. The intentional acts described herein by the Defendants were designed to disrupt the contractual relationship between Temsa and CH and deprive Temsa of its rights.

37. Actual disruption of the contractual relationship has occurred.

38. As a direct and proximate result of Defendants' wrongful conduct, Temsa has suffered damages, including money damages in an amount of at least $1,463,000 and as much as $9,800,000.

## COUNT THREE
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE
## ECONOMIC ADVANTAGE OR CONTRACTUAL RELATIONSHIPS
## (ALL DEFENDANTS)

39. Temsa incorporates by reference paragraphs 1 through 38 of the complaint as though set forth in full herein.

40. Temsa had a prospective relationship with third party purchasers of the motorcoaches.

41. Defendants had knowledge of Temsa's relationship with the prospective third party purchasers of the motorcoaches because of its knowledge of CH's business as Temsa's exclusive distributor.

///

///

7

42. Defendants intended to harm those prospective relationships by wrongfully possessing, using, selling and leasing the motorcoaches thereby preventing a relationship with the prospective third parties.

43. There is no justification for the Defendants' acts.

44. As a direct and proximate result of Defendants' wrongful conduct, Temsa has suffered damages, including money damages in an amount of at least $1,463,000 and as much as $9,800,000.

## COUNT FOUR
## CIVIL AIDING AND ABETTING (ALL DEFENDANTS)

45. Temsa incorporates by reference paragraphs 1 through 44 of the complaint as though set forth in full herein.

46. Defendants intentionally and substantially assisted or encouraged CH's conduct in breaching its contractual obligations to Temsa.

47. CH's duty to Temsa has been breached.

48. Defendants' actions have substantially caused that breach to occur.

49. As a direct and proximate result of Defendants' wrongful conduct, Temsa has suffered damages, including money damages in an amount of at least $1,463,000 and as much as $9,800,000.

## COUNT FIVE
## CIVIL CONSPIRACY (INDIVIDUAL DEFENDANTS)

50. Temsa incorporates by reference paragraphs 1 through 49 of the complaint as though set forth in full herein.

51. The Individual Defendants acted together to deprive Temsa of its rights, including ownership and possession of its motorcoaches.

52. The Individual Defendants acted in concert and by agreement, understanding, or a meeting of the minds, to deprive Temsa of its rights.

///

53. The Individual Defendants intended to accomplish this unlawful objective for the purpose of harming Temsa.

54. The Individual Defendants have committed multiple unlawful acts described herein in furtherance of their agreement to deprive Temsa of its rights, including possession of its motorcoaches.

55. The Individual Defendants' acts have caused harm to Temsa.

56. As a direct and proximate result of Defendants' wrongful conduct, Temsa has suffered damages, including money damages in an amount of at least $1,463,000 and as much as $9,800,000.

## COUNT SIX
## WASTE (MICHAEL HAGGERTY)

57. Temsa incorporates by reference paragraphs 1 through 56 of the complaint as though set forth in full herein.

58. Michael Haggerty committed or permitted acts constituting waste to the motorcoaches by allowing TC Nevada, John Haggerty and Olga Haggerty to unlawfully use the motorcoaches for their own benefit when Michael Haggerty exercised control and dominion over CH, which has the legal obligation to safeguard and hold the motorcoaches for Temsa's exclusive benefit until Temsa is paid in full.

59. Michael Haggerty used his dominion and control over CH to commit theft, fraud and other *ultra vires* acts.

60. Michael Haggerty's acts have caused permanent and/or lasting injury to the motorcoaches to the prejudice of Temsa who has the exclusive ownership interest and security interest in the motorcoaches.

61. As a direct and proximate result of Defendants' wrongful conduct, Temsa has suffered damages, including money damages in an amount of at least $1,463,000 and as much as $9,800,000.

///

62. Temsa is entitled to treble damages, which range from $4,389,000 to $29,400,000.

## COUNT SEVEN
## QUANTUM MERUIT (ALL DEFENDANTS)

63. Temsa incorporates by reference paragraphs 1 through 62 of the complaint as though set forth in full herein.

64. Defendants received monetary compensation from third parties as a result of their unlawful use of the motorcoaches for their own gain.

65. Defendants appreciated that benefit.

66. Defendants accepted and retained monetary compensation under circumstances where it would be inequitable for them to retain the benefit without payment for either leasing or purchasing the motorcoaches from CH and/or Temsa.

67. No agreement exists between Temsa and Defendants permitting their use of the motorcoaches in the manner described herein.

68. As a direct and proximate result of Defendants' wrongful conduct, Temsa has suffered money damages at an amount to be proven at trial and Defendants must be disgorged of any compensation received.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for its order and judgment as follows:

A. Judgment in Temsa's favor that:

    1. Defendants committed conversion;

    2. Defendants intentionally interfered with Temsa's contractual relationships;

    3. Defendants intentionally interfered with Temsa's prospective economic advantage or contractual relationships;

    4. Defendants Michael Haggerty, John Haggerty, and Olga Haggerty aided and abetted CH's breach of contract;

5. Defendant Michael Haggerty committed waste;

6. Defendants accepted and retained monetary compensation under circumstances where it would be inequitable for them to retain the benefit without payment for either leasing or purchasing the motorcoaches from CH and/or Temsa which they are not equitably entitled to retain;

B. Compensatory and/or nominal damages in an amount of not less than $1,463,000 and as much at $9,800,000;

C. Treble damages in an amount of $4,389,000 to $29,400,000;

D. Attorney's fees;

E. Interest;

F. Costs; and

G. Such other and further relief, legal and equitable, that this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues.

DATED this 7th day of September, 2018.

MORRIS LAW GROUP

By: /s/ Jean-Paul Hendricks
Steve Morris, NV Bar No. 1543
Jean-Paul Hendricks, NV Bar No. 10079
411 E. Bonneville Ave., Suite 360
Las Vegas, Nevada 89101

Thomas J. Finn (*Pro Hac Vice* forthcoming)
James E. Regan (*Pro Hac Vice* forthcoming)
McCarter & English, LLP
185 Asylum Street
Hartford, CT 06119

Attorneys for Plaintiffs
TEMSA ULASIM ARACLARI SANAYI VE TICARET A.S.