UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TEMSA ULASIM ARACLARI SANAYI VE TICARET A.S.,<br><br>Plaintiff,<br><br>v.<br><br>TC NEVADA, LLC, MICHAEL HAGGERTY, JOHN P. HAGGERTY, and OLGA F. HAGGERTY,<br><br>Defendants. | Case No. 2:18-cv-01738-APG-EJY<br><br>**ORDER** |

Pending before the Court is the Motion to Strike Defendants' Expert Witness Designations and Expert Reports, and to Exclude Expert Testimony filed by Temsa Ulasim Araclari Sanayi VE Ticaret A.S. ("Temsa"). ECF No. 89. The Court considered Temsa's Motion, Defendants' Opposition (ECF No. 91), and Temsa's Reply (ECF No. 96). The Motion is granted in part and denied in part.

**I.      Summary of the Pending Motion**

Temsa seeks to strike the reports and testimony of Defendants' experts who Temsa contends offer opinions regarding irrelevant subject matters. Temsa further contends Defendants' experts opine on ultimate issues of law telling the jury what results to reach. With respect to defense expert John. Beck, Temsa contends termination of agreements between Temsa and CH Bus Sales, LLC ("CH") has no relevance to issues before the Court. Temsa further contends defense expert Karl Schulze's opinions regarding the exercise of sound business judgment and fraudulent transfer are inadmissible because these opinions pertain to "irrelevant legal doctrines." Defendants respond by discussing (1) Temsa's answers to interrogatories referencing alleged fraudulent conduct by Defendant Michael Haggerty, (2) three motor coaches sold by CH to Defendant TC Nevada, LLC ("TC Nevada") the proceeds of which were used to pay a debt to U.S. Bank rather than amounts owed to Temsa, (3) issue preclusion raised by Temsa in an unrelated motion, (4) the experts' qualifications (not challenged by Temsa), and (5) the admissibility of expert testimony on the

ultimate issues before the Court. In its Reply, Temsa reiterates arguments made in its moving papers, assert that Defendants' issue preclusion discussion is "misplaced," and contend there is no cause of action alleging fraudulent transfer.

**II.     Discussion**

The Court has broad discretion when resolving discovery disputes involving experts under Fed. R. Civ. P. 37(c)(1). Nonetheless, "[e]xcluding expert testimony is not proper when there are other, less severe sanctions available." *Amos v. Makita U.S.A., Inc.*, Case No. 2:09-cv-01304-GMN-RJJ, 2011 WL 43092, at *4 (D. Nev. Jan. 6, 2011) *citing Galantine v. Holland America Line-Westours, Inc.*, 333 F.Supp.2d 991, 993-94 (W.D. Wash. 2004). Thus, "where the harm can be easily remedied, exclusion is not the proper sanction." *Id. citing Frontline Med. Assocs. v. Coventry Health Care*, 263 F.R.D. 567, 570 (C.D. Cal. 2009).

   a.     <u>Rule 702 of the Federal Rules of Evidence</u>.

Admissibility of expert testimony in a civil proceeding is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert's opinion reflects a reliable application of principles and methods to the facts of the case.

In *Barabin v. AsentJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), the Ninth Circuit explains that "[w]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable." (Internal citations and quote marks omitted.) Relevancy requires "the evidence … logically advance a material aspect of the party's case." *Id*. (citation omitted). Reliability encompasses "whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Id. citing Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). "[E]videntiary reliability is based upon scientific validity." *Id. citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n.9 (1993). The role of the Court, however, is not to determine the

"correctness of the expert's conclusions but the soundness of his methodology." *Id. citing Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

      b.     <u>Rule 704 of the Federal Rules of Evidence</u>.

Rule 704 of the Federal Rules of Evidence states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." While testimony on an ultimate issues is not "per se improper[,] ... an expert witness cannot give an opinion as to her legal conclusion, *i.e.,* an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal citations and emphasis omitted). In *Hangarter*, a bad faith insurance case, the court distinguished expert testimony that defendants "deviated from industry standards supported a finding that they acted in bad faith," from expert testimony that reached the "legal conclusion that [d]efendants actually acted in bad faith." *Id*. The opinion regarding deviation from industry standards is admissible; whereas, a conclusion that defendants acted in bad faith is not. *Id.* (citations omitted). In *Kohler Co. v. Watts Water Technologies, Inc.*, Case No. CV-06-0143-AG (VBKx), 2009 WL 4263556, at *3 (C.D. Cal. March 17, 2009), the court states "that testimony 'embracing' the ultimate issue of fact is admissible, while testimony flatly stating a conclusion of law is not." The court explained: "'Was there a contract?' would be excluded, while the question, 'Was the agreement in the usual general form of a corporate indemnity agreements?' would be allowed." *Id*.

      c.     <u>The Court's Gatekeeper Role</u>.

In addition to whether the expert opinions at issue includes legal conclusions on the matters at issue, the Court must be cognizant of its overall role as gatekeeper, an active and important role when examining "all forms of expert testimony, not just scientific testimony." *Hangarter*, 373 F.3d at 1017 (citation omitted). The gatekeeping obligation, requiring the Court to admit only expert testimony that is reliable and relevant, is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar v. California State University, Hayward,* 299 F.3d 1053, 1063-64 (9th Cir. 2002). Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564 *citing Daubert*, 509 at 588.

d. <u>Lay Versus Expert Opinion Testimony</u>.

"[T]he line between lay and expert opinion depends on the basis of the opinion, not its subject matter." *United States v. Barragan*, 871 F.3d 689, 704 (9th Cir. 2017). "The admissibility of lay opinion testimony under Rule 701 is committed to the sound discretion of the trial judge and his decision will be overturned only if it constitutes a clear abuse of discretion." *United States v. Gadson*, 763 F.3d 1189, 1209 (9th Cir. 2014) (quoting *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)).

Lay opinion testimony must be "helpful to the jury in acquiring a clear understanding of the witness's testimony or the determination of a fact in issue." *United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007) (quoting Fed. R. Evid. 701) (internal quotation marks omitted). In contrast, expert testimony must be based on the witness's "scientific, technical or other specialized knowledge" and the Court serves as a gatekeeper for this testimony. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 589-91; *Kumho Tire Co.*, 526 U.S. at 147-48. "[L]ay witnesses may testify to 'particularized knowledge by virtue of [their] experience[s]' even if the subject matter is 'specialized or technical[,] because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702.'" *Montalvo v. Am. Fam. Mut. Ins. Co.*, Case No. CV-12-02297-PHX-JAT, 2014 WL 2986678, at *5 (D. Ariz. July 2, 2014) (quoting *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009)).

e. <u>Mr. Beck Does Not Offer Expert Testimony and, Thus, His Report is Struck. Whether his Lay Witness Testimony is Ultimately Admissible is Deferred.</u>

Mr. Beck's purported expert report is a total of two pages long. ECF No. 90-1 at 47-48. The report identifies the two questions Mr. Beck was asked to answer, includes a page summarizing the documents Mr. Beck reviewed and his experience in the manufacturing and distribution of buses, and ends with two short paragraphs (each two sentences) stating Mr. Beck's opinions. Among other things required by Federal Rule of Civil Procedure 26(2)(B)(i) and (ii), an expert report must contain (1) "a complete statement of all opinions the witness will express *and the basis and reasons for them*;" and (2) the facts or data considered by the witness in forming them." (Emphasis added.) Unfortunately, Mr. Beck's conclusions fail to offer any basis, reasons, data or analysis that underlie

4

the opinions reached. Indeed, Mr. Beck provides nothing other than the documents reviewed as supporting the conclusions he offers. ECF No. 90-1 at 48.

Further, Mr. Beck's opinions are nothing more than common sense. Mr. Beck opines termination of a distributorship agreement would negatively impact (1) the distributor, especially if the manufacturer sells its product directly at discounted prices, and (2) the distributor's ability to honor any maintenance program in place. That termination of contracts to distribute and maintain a product would negatively impact the party who, before termination, distributed and maintained the product is obvious—again, simple common sense. These opinions are not beyond the knowledge of an average juror. "Expert opinion must have substance such that it would be helpful to the jury. … In other words, it should address an issue beyond the common knowledge of the average layman." *Siring v. Oregon State Board of Higher Educ. ex rel. Eastern Oregon University*, 927 F.Supp.2d 1069, 1076 (D. Ore. 2013). The Court finds Mr. Beck's opinions will not help the jury understand facts at issue. For this reason, Mr. Beck's opinions do not satisfy the requirements of Rule 702.

Finally, to place the "expert" moniker on Mr. Beck's conclusions risks giving special weight to evidence that is, at best, not clearly tied to the claims raised by Temsa. That is, a review of the Complaint shows there is no dispute that Temsa terminated contracts establishing CH as the exclusive distributor for Temsa's products. ECF No. 1 ¶ 9. There is also no dispute that CH is not a defendant in this action, nor is it a third party plaintiff suing Temsa. *See* Docket generally. Neither the existence of a maintenance contract between Temsa and CH nor breach of such agreement is mentioned in the Complaint. ECF No. 1. Thus, Mr. Beck's testimony does not demonstrably advance a material aspect of the case.

Nonetheless, whether Mr. Beck's testimony may ultimately be admissible in his capacity as a lay witness will be decided at a later date by the District Judge. Although the Court notes above that CH is not a party to this action, Defendant Michael Haggerty is alleged to be Chairman of the Board of CH Bus Sales, LLC, and CH is referenced in paragraphs 9 through 14, 17, 18, 34, 36, 59, and 66 of Temsa's Complaint.[1] *Id*. ¶¶ 3, 9-14, 17, 18, 34, 36, 59, 66. These references, examples

---

[1] By way of example, Paragraph 11 of the Complaint alleges: "CH obtained no ownership interest in any Temsa motorcoach until Temsa received payment in full for the specific motorcoach." Paragraph 12 alleges: "CH was not permitted to sell, lease or otherwise dispose of any motorcoach without paying Temsa in full. The amount owed to

of which are provided in n.1, do not appear to relate to whether CH could continue to sell Temsa buses or whether CH could "maintain or honor any maintenance programs." ECF No. 90-1 at 48 (Opinions 1 and 2 respectively). Instead, Temsa's allegations relate to who owned the motorcoaches, whether CH paid Temsa for the motorcoaches, whether CH had the authority to sell Temsa motorcoaches, Defendants' alleged disruption of Temsa's contractual relations, and Defendants' retention of the benefit from the motorcoach sales. *Id*. 1 ¶¶ 11, 12, 13, 14, 18, 36, 59, 66. Thus, at first blush, the relevance of Mr. Beck's testimony appear attenuated. This said, the Court cannot conclude Mr. Beck's lay opinions have no relevance whatsoever and, therefore, should be barred. Such a finding is premature in the absence of a more complete presentation of evidence that will occur at trial.

The Court grants Temsa's Motion to Strike Mr. Beck as an expert witness. His testimony may not be introduced as that of an expert and his report may not be offered for that purpose. However, whether and to what extent Mr. Beck may offer lay opinions is deferred to a more complete development of evidence at trial when the Court will be more fully informed as to relevance.

   f. <u>The Expert Opinions Offered by Karl Schulze are Struck in Part</u>.

Mr. Schulze's expert report offers two opinions each challenged by Temsa. First, the Court finds Mr. Schulze's opinion that Mr. Haggerty "exercised sound business judgment" when he paid a debt owed to U.S. Bank rather than a debt owed to Temsa, and did so in compliance with Minnesota law (ECF No. 90-1), is a legal conclusion. Said slightly differently, the opinion that Mr. Haggerty, in fact, exercised sound business judgment meeting the obligations established by law, rather than the opinion that Mr. Haggerty's conduct was consistent with industry standards of sound business judgment, is an opinion telling the jury what the outcome of this defense should be. The opinion crosses the line from reaching an ultimate issue of fact to stating a conclusion of law by finding the elements of the business judgment rule under Minnesota law were met.

---

Temsa by CH on the motorcoaches ranges from approximately $209,000 to $382,000, per motorcoach." Paragraph 59 alleges: "Michael Haggerty used his dominion and control over CH to commit theft, fraud and other ultra vires acts." Paragraph 66 alleges: "Defendants accepted and retained monetary compensation under circumstances where it would be inequitable for them to retain the benefit without payment for either leasing or purchasing the motorcoaches from CH and/or Temsa". ECF No. 1 ¶¶ 11, 12, 59, 66.

6

Assuming application of the business judgment rule is a proper defense in this case (understanding Temsa says it is not), and presuming Minnesota law is properly applied to the question of whether the requirements for the business judgment rule defense were met (which Temsa disputes), the conclusion reached is an impermissible expert opinion.  Mr. Schulze cannot offer a legal conclusion that would, in sum, take from the jury the job of applying facts to law.  *Pelican International, Inc. v. Hobie Cat Company*, 655 F.Supp.3d 1002, 1031 (S.D. Cal. 2023) ("[i]t is well-established that an expert witness may not … tell the jury how to apply the law to the facts of the case") (collecting cases).  *See also Kapila v. Warburg Pincus, LLC*, Case No. 8:21-cv-2362-CEH, 2023 WL 2584469, at *17 (M.D. Fla. Mar. 21, 2023) (rejecting expert opinions that individual defendant conduct met the "entire fairness standard of review" under Delaware law, "did not violate any duty owed … as a matter of Delaware law," and "the business judgment rule applie[d]" as expressing legal opinions).  An expert can "testify as to facts relevant in the analysis" of whether a particular defendant held a particular position within a business entity as well as what duties were owed, "but he may not opine as to the ultimate legal conclusions ….  If an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position.  Such differing opinions as to what the law is would only confuse the jury …." *Id*. (internal citation, quote marks, and bracket omitted).

Mr. Schulze's second opinion lists the elements of a voidable transaction (a fraudulent transfer) under Minnesota statutory law.  ECF No. 90-1 at 12-13.  Mr. Schulze then does an "evaluation" of facts applied to each element of the law he quotes.  *Id*. at 13-14.  In doing so, Mr. Schulze states that some elements identified for purposes of "determining actual intent" are inapplicable to the instant dispute.  *Id*. at 13-14.  Mr. Schulze also offers short statements of fact supposedly applicable to the remaining "intent" factors.  *Id*. at 14.  Mr. Schulze does no expert analysis of these facts.  He merely states conclusions.  *Id*.

By way of example, discussing "whether a transfer or obligation was to an insider," Mr. Schulze states:

> The sale of the buses was, to my understanding, at market value and at arm's-length.  The fact that Olga Haggerty, the wife of [Defendant] Michael Haggerty is an owner/officer of [Defendant] TC Nevada is not likely

7

> determinative, since the transfer was from the debtor (CH Bus Sales, LLC) to another LLC (TC Nevada, LLC). The definitions of "insider" provided in 11 U.S.C. 101(31) do not clearly encompass such a relationship.

*Id*. at 14. Mr. Schulze does not identify on what facts he bases his "understanding" that the transaction between CH and TC Nevada was at arm's length or at market value. *Id*. Mr. Schulze also identifies no expert knowledge leading to his opinion that Olga Haggerty's status as the wife of Defendant Michael Haggerty and owner of TC Nevada "is not likely determinative" of a fraudulent transfer. *Id*. Instead, Mr. Schulze points to a statutory definition. *Id*. Identifying that a statute does not include certain examples in its definition of a specified term is not demonstration of specialized knowledge that will help a jury understand evidence or determine a fact in issue.

Even assuming Mr. Schulze is qualified to offer the opinions he does (as Temsa does not challenge Mr. Schulze's qualifications), there is no discussion demonstrating what specialized knowledge underpins the basis for the conclusions Mr. Schulze's reached. The "Analysis and Opinion" section of Mr. Schulze's report offers no discussion of the actual sale of the motorcoaches and no application of market value to the sale. *Id*. at 11-14. There is also no discussion underlying Mr. Schulze's conclusion that he sees "no indication, nor allegation, that any act of concealment took place." *Id*. at 14. Mr. Schulze admits he has "not seen sufficient financial data … to determine whether the sale of the buses at issue represented 'substantially all' of CH Bus Sales' assets at the time of sale." *Id*. Expert opinions must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

Further, case law strongly suggests concluding a party mislead another or made misrepresentations on which an opposing party relied is impermissible opinion testimony as it invades "the province of the jury by drawing the ultimate inference or conclusion …." (Contrast *OCG Energy, LLC v. Shen*, Case No. 8:22-cv-1568-FWS-DFM, 2024 WL 694912, at *10 (C.D. Cal. Feb. 12, 2024) (collecting cases)). Importantly, here, Mr. Schulze never offers an opinion regarding fraudulent intent. ECF No. 90-1 at 14. Instead he provides a set of shaky opinions regarding factual elements considered when determining whether a fraudulent transfer occurred. *Id*.

Given Mr. Schulze's qualifications to offer these opinions is not challenged, the Court finds opinions applicable to fraudulent intent, attacked by Temsa, is best left to legal argument on the

applicability of Minnesota law and attack through cross examination, contrary evidence, and attention to the burden of proof. As the Supreme Court stated in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

### III.   Order

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Strike Defendants' Expert Witness Designation and Accompanying Expert Witness Reports and Motion to Exclude Defendants' Intended Expert Witness Testimony (ECF No. 89) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the expert report submitted by John D. Beck is struck.

IT IS FURTHER ORDERED that Mr. Beck's testimony may not be offered as expert testimony.

IT IS FURTHER ORDERED that whether Mr. Beck's testimony may be introduced as a lay witness is deferred to a decision by the District Judge at trial or, if appropriate, when deciding a motion in limine.

IT IS FURTHER ORDERED that Karl Schulze's expert report and testimony, to the extent it addresses the business judgment rule under Minnesota law is stuck as opining on an ultimate legal issue that is the province of the jury.

IT IS FURTHER ORDERED that the request to strike Mr. Schulze's expert report and testimony regarding whether Defendants' conduct is consistent with a fraudulent transfer under Minnesota law is DENIED.

Dated this 30th day of April, 2024.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE